UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J<small>USTIN</small> J<small>OHNSON</small>,

   Plaintiff,

v.

G<small>RAND</small> T<small>RUNK</small> W<small>ESTERN</small> R<small>AILROAD</small>
C<small>OMPANY</small>,

   Defendant.

_____/

Case No. 18-13582

S<small>ENIOR</small> U.S. D<small>ISTRICT</small> J<small>UDGE</small>
A<small>RTHUR</small> J. T<small>ARNOW</small>

U.S. M<small>AGISTRATE</small> J<small>UDGE</small>
A<small>NTHONY</small> P. P<small>ATTI</small>

**O<small>RDER</small> G<small>RANTING</small> D<small>EFENDANT'S</small> M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small> [11]**

On November 16, 2018, Plaintiff Justin Johnson commenced this Federal Railroad Safety Act ("FRSA") retaliation action against his employer, Defendant Grand Trunk Western Railroad Company ("GTW"). In 2013, Plaintiff filed an Occupational Safety and Health Act ("OSHA") complaint against GTW after receiving a letter of reprimand for reporting a workplace injury. His complaint was resolved with a settlement agreement with GTW. The agreement ordered GTW to remove the letter of reprimand from Plaintiff's personnel file. In 2015, GTW suspended Plaintiff for 50-days for violating an attendance rule. During the investigation, Plaintiff discovered that GTW had not removed the letter of reprimand from his file, in violation of the settlement agreement. Plaintiff now claims that GTW violated the FRSA by relying on this letter in deciding to suspend him for 50-days.

On August 9, 2019, Defendant filed a Motion for Summary Judgment [11]. On September 9, 2019, Plaintiff filed a Response [14]. On September 20, 2019, Defendant filed a Reply [15]. On February 12, 2020, the Court held a hearing with oral argument on the Motion [11]. For the reasons explained below, Defendant's Motion for Summary Judgment [11] is **GRANTED**.

## Factual Background

### a. Plaintiff's 2013 OSHA Complaint and 2014 Settlement Agreement

Plaintiff has worked as a conductor at GTW since 2011. In February 2013, Plaintiff hurt his thumb while operating a switch. (Dkt. 12-2, pg. 2). After reporting the injury, Plaintiff received a letter of reprimand for violating company rules regarding workplace safety on April 9, 2013. (*Id.*). Plaintiff then filed an OSHA complaint "alleging that the letter of reprimand was in retaliation for reporting a work-related injury." (*Id.*).

In June 2014, GTW and Plaintiff settled the OSHA claim and signed a settlement agreement. (*Id*. at 3; Dkt. 14-4). The terms of the agreement provided for a monetary payment to Plaintiff as well as removal of the April 9, 2013 letter of reprimand from Plaintiff's personnel records. (Dkt. 12-7, pg. 1). Defendant claims that it tendered settlement payment to Plaintiff, but "inadvertently did not instruct Human Resources to have the Letter of Reprimand removed." (*Id*. at 2). Plaintiff did not discover this mistake until Defendant's investigated him in 2015 for violating attendance rules.

### b. Plaintiff's 2014 Slow Order Violation

On June 12, 2014, Plaintiff received a 30-day suspension for violating a slow order. (Dkt. 12-2, pg. 115). The 30-day suspension was mandatory and could not be negotiated. (Dkt. 12-6, pg. 2). Plaintiff signed a waiver of investigation and accepted the 30-day suspension. (Dkt. 12-2, pg. 5).

### c. Plaintiff's 2015 Attendance Rule Violation

GTW schedules their employees to either work a regular shift or be available on call. If an employee on call anticipates that they will not be available to work, GTW attendance rules require them to "mark off" immediately to alert GTW of their unavailability before they are called to work. (*Id.* at 108). An employee on call is paid for a shift whether or not they are called to work. (*Id.* at 10).

On call employees are required to give advance notice if they will be unavailable for a shift. However, employees with a certified Family Medical Leave Act ("FMLA") health condition are allowed to give as little as two hours notice if they are unable to work due to their condition. (Dkt. 14-2, pg. 22). Plaintiff fits in this category. He suffers from tremors that could flare up at any time. (*Id.* at 21). Because of his condition's unpredictable nature, GTW allows Plaintiff to give even less than two hours notice if he is unable to work. (*Id.* at 22). This notice or "mark off," however, has to occur *as soon as* Plaintiff knows that he cannot work. (Dkt. 12-2, pg. 80-81). Plaintiff was

accused of violating this rule for not marking off until after he was called to work on April 6, 2015.

Defendant claims that on April 6, 2015, Plaintiff was called for duty at 7:37 p.m., did not answer, and instead called the Attendance Management Center ("AMC") at 7:41 p.m. to mark off and request FMLA leave. (Dkt. 12-2, pg. 34-35, 109, 112, 114). Plaintiff, on the other hand, claims that while he was calling the AMC to mark off, GTW called him for duty at the same time, 7:38 p.m. (Dkt. 12-2, pg. 53).

Plaintiff claims that his supervisors were suspicious of the timing of his FMLA request, because they believe he had a pattern of marking off immediately before, or sometimes after, being called. (Dkt. 12-3, pg. 11). This suspicion was expressed in an email exchange regarding the timing of Plaintiff's mark-off, where, Plaintiff's supervisor, Superintendent James Golombeski stated, "[t]his guy books off FMLA more than anyone on call when on the extra board and just prior to his shift starting when on a regular job. I don't buy this guy's excuse." (Dkt. 12-3, pg. 18).

Two days later, AMC employee Michael Wolski spoke to Plaintiff about his mark off. (Dkt. 12-2, pg. 87). Wolski claims that during the phone call, Plaintiff told him that he knew he needed to request FMLA leave before he was called to work on April 6, but was caught off guard by how quickly his name was called. (Dkt. 12-2, pg. 87-88). Wolski relayed this information to AMC Manager, Rolando Jimenez, who

decided to investigate Plaintiff for violating GTW's attendance rules. (Dkt. 12-3, pg. 18-19).

Plaintiff's hearing was held on April 28, 2015. Wolski testified that during his conversation with Plaintiff on April 8, Plaintiff said that he knew he was going to mark off prior to AMC calling him in for a shift. (*Id*.). Additionally, Jimenez, an attendance rules expert, testifies that Plaintiff's failure to mark off before he was called in was a violation, because he knew beforehand that he was unable to work. (Dkt. 12-2, pg. 32-33, 81).

During Plaintiff's testimony, his union representative, William Miller, objected to the admittance of Plaintiff's personnel file, because it still included Plaintiff's 2013 Letter of Reprimand, which Plaintiff and Defendant's settlement agreement required to be removed. (Dkt. 12-2, pg. 45). Miller, however, did not mention the settlement agreement. He instead claimed that Plaintiff's FRSA case had "overturned" the letter and asked the hearing officer to issue a new file without the letter. (*Id*.). The hearing officer noted the objection and kept the entire file, including the reprimand letter, as part of the record. (*Id*.).

### d. Plaintiff's 50-day Suspension

After the hearing, Plaintiff's supervisor, Golombeski, reviewed the hearing transcript and exhibits, including Plaintiff's personnel file, and found Plaintiff responsible for violating GTW's attendance rules. (Dkt. 12-3, pg. 2, 5). Golombeski

gave Plaintiff a 50-day suspension for the violation. (*Id*. at 7, 20). Golombeski claims that this suspension was based on his progressive disciplinary method in which he imposes a "steeper" discipline than the last one the employee received, regardless of the severity of the violation. (*Id*. at 2). Plaintiff's last suspension was 30-days, so Golombeski accordingly suspended him for 50-days. Conversely, Miller claims that he has represented several GTW employees where discipline was not assessed by Golombeski in a progressive manner. Golombeski additionally admits that his progressive discipline method "becomes less black and white" the "older the rule violation gets." (*Id*. at 9).

Although Golombeski's discipline letter stated that he considered Plaintiff's past discipline record, Golombeski testified that he only considered Plaintiff's most recent discipline and did not rely on the letter of reprimand, because it was too insignificant. (*Id*. at 6, 8-9, 20). Further, Golombeski testified that he was not aware of the 2013 investigation against Plaintiff or his settlement agreement with GTW. (*Id*. at 3, 14).

**Procedural History**

On November 4, 2015, Plaintiff filed a complaint with OSHA alleging that his 50-day suspension violated the FRSA. (Dkt. 12-9, pg. 1). On October 30, 2017, OSHA dismissed Plaintiff's complaint. (*Id*.). Plaintiff subsequently appealed. On October 23, 2018, the Administrative Law Judge ("ALJ") granted GTW's motion for a summary decision. (*Id*.). The ALJ found there was no evidence that Plaintiff's protected activity

was a contributing factor in Defendant's decision to suspend him for 50-days. (*Id.* at 12.) Plaintiff appealed the ALJ's decision to the Administrative Review Board ("ARB"). While the ARB appeal was pending, Plaintiff exercised the "kick-out" provision of the FRSA and filed the instant action. *See* 49 U.S.C. § 20109(d)(3); *see also Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 454 (9th Cir. 2018) ("If the Secretary fails to issue a final decision within 210 days, the employee may bring a civil action in federal court.").

On November 16, 2018, Plaintiff filed his Complaint [1] in this Court claiming that his 50-day suspension was retaliation in violation of the FRSA. Before the Court is GTW's Motion for Summary Judgment [11] filed on August 9, 2019. The motion is fully briefed. The Court held a hearing on the motion on February 12, 2020.

**Legal Standards**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return

a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the Court views all of the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Anderson*, 477 U.S. at 255.

## Analysis

### I.   Federal Railroad Safety Act

The "FRSA prohibits rail carriers from retaliating against employees who engage in safety-related protected activities." *Hall v. Soo Line R.R. Co.*, No. CV 17-2120, 2017 WL 4772411, at *4 (D. Minn. Oct. 20, 2017); 49 U.S.C. § 20109(a). To establish a prima facie retaliation claim under the FRSA, Plaintiff has the burden of showing the following:

> (i) The employee engaged in a protected activity; (ii) The respondent knew or suspected that the employee engaged in the protected activity; (iii) The employee suffered an adverse action; and (iv) The circumstances were sufficient to raise the inference that the protected activity (or perception thereof) was a contributing factor in the adverse action.

29 C.F.R. § 1982.104(e)(2).

Once a prima facie claim is satisfied, the burden shifts to the employer to prove "by clear and convincing evidence, that [it] would have taken the same unfavorable personnel action in the absence of that behavior." 49 U.S.C.A. § 42121(b)(2)(B). Here, all elements, except for whether Plaintiff suffered an adverse action, are in dispute.

## II. Protected Activity

The FRSA typically protects employees when they report a workplace injury, complain about safety policies or otherwise attempt to enforce safety provisions. *See Holloway v. Soo Line R.R. Co.*, 916 F.3d 641 (7th Cir. 2019) (plaintiff reported workplace injury); *Rookaird v. BNSF Ry. Co.,* 908 F.3d 451 (9th Cir. 2018) (plaintiff refused to stop an air-brake test when commanded); *BNSF Ry. Co. v. United States Dep't of Labor Admin. Review Bd.*, 867 F.3d 942 (8th Cir. 2017) (plaintiff filed an injury report about repeated safety problems); *Gunderson v. BNSF Ry. Co.,* 850 F.3d 962, 967 (8th Cir. 2017) (plaintiff reported a hazardous safety condition).

However, Plaintiff's asserted protected activity is more tenuous than these typical examples. Plaintiff claims that (a) his 2013 OSHA complaint and (b) his enforcement of the subsequent settlement agreement, which ordered GTW to remove Plaintiff's letter of reprimand from his file, constitute a "continuing protected activity under FRSA." (Dkt. 14, pg. 14). Defendant, however, argues that the Court's analysis should be cabined to only Plaintiff's enforcement of the settlement agreement. (Dkt. 12, pg. 21-22).

If the Court finds that Plaintiff's protected activity is cabined to only the settlement agreement, then Plaintiff's allegation becomes a contract claim unenforceable by the FRSA. *See Leiva v. Union Pacific Railroad Company*, ARB Case No. 2018-0051, at *2-3 (ARB May 17, 2019) (dismissing a FRSA complaint, because

when the employer "breached the terms of the settlement agreement by maintaining information in [the employee's] personnel file relating to [the employee's] disciplinary history[,]… a claim in contract for breach of the terms of the settlement agreement arose). But since the Court is tasked with looking at the facts in the light most favorable to the non-moving party, Plaintiff, the evidence will be analyzed under Plaintiff's continuing protected activity theory.

Under this theory, both the 2013 OSHA complaint and enforcing the subsequent settlement agreement constitute protected activities. The FRSA states that employers cannot discriminate against employees who file a complaint related to railroad safety. 49 U.S.C.A. § 20109(a)(1)(3). Plaintiff's 2013 OSHA complaint fits within these parameters: he filed a complaint for being reprimanded after a reporting an injury. His settlement agreement continues to protect his complaint by ordering Defendant to remove the reprimand letter from Plaintiff's personnel file. Therefore, Plaintiff's enforcement of the agreement is also protected under FRSA.

### III. Knowledge

Next, Plaintiff needs to prove that his employer knew or suspected that he engaged in a continuing protected activity. 29 C.F.R. § 1982.104(e)(2)(ii). This knowledge, actual or constructive, "must be tied to the decision-maker involved in the unfavorable personnel action." *Conrad v. CSX Transp., Inc.*, 824 F.3d 103, 108 (4th Cir. 2016). Additionally, Plaintiff "need not prove that the decision-maker responsible

for the adverse action knew of the protected activity if it can be established that those *advising* the decision-maker knew, regardless of their motives." *Gibbs v. Norfolk S. Ry. Co.*, No. 3:14-CV-587, 2018 WL 1542141, at *6 (W.D. Ky. Mar. 29, 2018) (quoting *Rudolph v. Nat'l R.R. Passenger Corp.*, ARB Case No. 11–037, 2013 WL 1385560, at *12 (Dep't of Labor Mar. 29, 2013) (emphasis added)).

Golombeski, who decided to give Plaintiff a 50-day suspension, did not attend Plaintiff's investigation hearing when Plaintiff discovered that the reprimand letter was not removed from his personnel file. However, Golombeski reviewed the hearing transcript to make his decision. (Dkt. 12-3, pg. 2). The transcript shows that Plaintiff's union representative, Miller, objected to the letter's inclusion in Plaintiff's file, because Plaintiff's FRSA case had "overturned" the letter. (Dkt. 12-2, pg. 45).

Golombeski claims that he was neither aware of the investigation that resulted in the reprimand letter nor was he provided with any documentation proving that the letter was meant to be removed from Plaintiff's file. (Dkt. 12-3, pg. 6). However, looking at the evidence in the light most favorable to the non-moving party, Golombeski, at the least, either knew or should have known from reviewing the hearing transcript that Plaintiff attempted to remove a reprimand letter from his file that he claimed should have been removed as a result of a FRSA filing.

## IV. Contributing Factor and Defendant's Rebuttal

Finally, Plaintiff must prove that his continuing protected activity was a contributing factor in Golombeski's decision to suspend him for 50-days. 29 C.F.R. § 1982.104(e)(2)(iii). A contributing factor "is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Ameristar Airways, Inc. v. Admin. Review Bd., U.S. Dep't of Labor*, 650 F.3d 562, 567 (5th Cir. 2011). Plaintiff can demonstrate a contributing factor "through either direct or circumstantial evidence." *Wagner v. Grand Truck W. R.R.*, No. 15-10635, 2017 WL 733279, at *4 (E.D. Mich. Feb. 24, 2017). Circumstantial evidence may include "(i) temporal proximity; (ii) indications of pretext; (iii) inconsistent application of an employer's policies; (iv) shifting explanations for an employer's actions; (v) antagonism or hostility toward a complainant's protected activity; (vi) falsity of an employer's explanation for the adverse action taken; and (v) change in the employer's attitude toward the complainant after he engages in protected activity." *Id.* (citing *Kuduk v. BNSF Ry. Co.*, 980 F. Supp. 2d 1092, 1101 (D. Minn. 2013)). If Plaintiff succeeds in proving the contributing factor element, Defendant is still entitled to summary judgment if it proves, by clear and convincing evidence, that Golombeski would have made the same decision absent Plaintiff's protected activity. *See* 49 U.S.C. § 42121(b)(2)(B). Defendant has proved that here.

Plaintiff claims that Golombeski reviewed Plaintiff's entire personnel record, including the letter of reprimand, to arrive at 50-days. Defendant argues that although Golombeski had access to Plaintiff's file, he only relied on the most recent portion of the record and gave Plaintiff a 50-day suspension one reason: it was longer than his last suspension of 30-days.

> Q. How did you arrive at 50 days?
> A. It was more stringent than the 30 days he received prior.
> Q. That's the only reason?
> A. Yeah.

(Dkt. 12-3, pg. 7).

Golombeski claims that this decision was based on his progressive disciplinary model. Plaintiff, on the other hand, points to cases where Golombeski did not follow the progressive disciplinary model as circumstantial evidence of "inconsistent application of an employer's policy." *See Wagner*, 2017 WL 733279, at *4. But the evidence does not support the assertion that this model was a formal policy, instead, Golombeski testifies that it was an unwritten guide to discipline that he admits becomes "less black and white" when reviewing older rule violations. (Dkt. 12-3, pg. 8-9). Furthermore, Golombeski also stated that the letter of reprimand was too insignificant and low level to either base his decision on or change his decision by. (*Id.*).

Plaintiff also attempts to argue that the letter of reprimand was a building block in his line of disciplines and that he would not have received the 30-day suspension without the letter's inclusion in his file. This, however, is flatly contradicted by

Page **13** of **15**

evidence that the 30-day suspension was the minimum discipline for violating a mandatory directive to slow down. (*Id* at 14). This means that Plaintiff would have received a 30-day suspension regardless of the reprimand letter—significantly, this is not disputed by Plaintiff's union representative who negotiates employee disciplines. (Dkt. 12-6, pg. 2 ("No, this was not even negotiated because of it being a slow order. Over 10 miles an hour is mandatory by the FRA that you're out of service for 30 days suspension[.]")).

Furthermore, Plaintiff argues that Golombeski was biased against Plaintiff and this antagonism should make the Court skeptical of his non-retaliatory reasons for the suspension. It does not. Although Golombeski states that he was suspicious of Plaintiff's habit of marking off right before being called and perceived Plaintiff's behavior as "trying to get a day's pay without working," these suspicions were targeted towards Plaintiff's credibility, not his protected activity. (Dkt. 12-3, pg. 11). And although one could argue that Golombeski was skeptical of Plaintiff's regular mark offs, the evidence shows that Jimenez made the decision to investigate Plaintiff—not Golombeski. (Dkt. 12-3, pg. 18-19). Moreover, Plaintiff claims himself that he does not have a "solid answer" for why he "feels" that the letter played a role in the 50-day suspension and that he is "just speculating" without any facts. (Dkt. 12-2, pg. 17). Furthermore, Plaintiff states that he does not believe that the 50-day suspension was "retaliatory[,] but maybe mislead by the work history." (*Id*. at 19).

Page **14** of 15

It is important to note that Plaintiff's arguments about whether or not Golombeski relied on the reprimand letter in his decision making miss the mark. The letter of reprimand was not Plaintiff's protected activity—his attempts to remove it were. Plaintiff has failed to show any evidence on the record that proves that Golombeski looked unfavorably towards these efforts, namely the 2013 OSHA complaint and the subsequent settlement agreement, let alone relied on them in deciding Plaintiff's discipline. Therefore, because Plaintiff's proffered reasons for why his protected activity was a contributing factor are all rebutted by Defendant's evidence that Golombeski would have given the same punishment absent the letter of reprimand and his protected activity, Defendant is entitled to summary judgment.

## Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [11] is **GRANTED**.

**SO ORDERED**.

Dated: April 15, 2020

s/Arthur J Tarnow
Arthur J. Tarnow
Senior United States District Judge